Filed 9/25/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HANH NGUYEN, a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION, <br><br> Defendant and Respondent. | H038934 <br> (Santa Clara County <br> Super. Ct. No. 110CV185748) |

In this case, we determine which statute of limitations applies to an action alleging pre-birth injuries due to exposure to hazardous materials or toxic substances that occurred more than 20 years ago. Plaintiff Hanh Nguyen (sometimes Plaintiff) contends that such claims are subject to the two-year limitations period in Code of Civil Procedure section 340.8 for actions "for injury or illness based upon exposure to a hazardous material or toxic substance," which she asserts is subject to tolling for minority or mental incapacity. (Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.) Defendant Western Digital Corporation (WDC) argues that such claims are subject to the six-year limitations period in section 340.4 for actions based on birth and pre-birth injuries, which is not subject to tolling for minority or mental incapacity.

Plaintiff was born with agenesis of the corpus callosum (a birth defect affecting the structure of the brain) and other birth defects. She alleges that her birth defects were caused by her mother's occupational exposure and her (Hanh's) *in utero* exposure to hazardous and toxic chemicals at WDC. Plaintiff also alleges that her parents did not

know that her birth defects were caused by exposure to hazardous chemicals at WDC until December 2008, when family members heard on the radio that Plaintiff's attorneys were investigating cases of birth defects caused by chemical exposures in the semiconductor industry.

Plaintiff appeals from a judgment of dismissal after the trial court sustained WDC's demurrer to the third amended complaint without leave to amend on the ground that the action was barred by the statute of limitations for pre-birth injuries in section 340.4. Plaintiff contends the applicable statute of limitations is section 340.8, the limitations period for causes of action based on exposure to hazardous substances (which is subject to tolling for minority and mental incapacity) and that the trial court erred when it applied the limitations period for pre-birth injuries in section 340.4 (which is not subject to such tolling). Plaintiff also contends that (1) she has pleaded sufficient facts to support delayed accrual of her claims until December 2008, or alternatively, until at least December 1998; and (2) WDC is equitably estopped from relying on a statute of limitations defense because it knew the chemicals used in its facility caused reproductive harm, and because it fraudulently concealed the causal connection between the chemical exposure and Plaintiff's injuries.

Construing both section 340.4 and section 340.8, we hold that claims based on birth or pre-birth injuries that are due to exposure to hazardous materials or toxic substances are subject to the limitations period in section 340.8. We also hold that even though section 340.8 did not take effect until almost 10 years after Plaintiff was born, it applies in this case because the allegations of the third amended complaint support a claim of delayed accrual until December 31, 1998. And since Plaintiff's claims did not accrue until that date, they were not barred by the six-year limitations period in section 340.4 (pre-birth injuries) on January 1, 2004, when section 340.8 (toxic exposures) went into effect. Moreover, since Plaintiff's claims were subject to the limitations period in section 340.8 when it took effect, she is entitled to tolling for minority that applies to

2

section 340.8 claims.  Thus, her action filed on October 25, 2010, when she was 16 years old, was timely.  We will therefore reverse the judgment and direct the trial court to vacate its previous order and enter a new order overruling the demurrer to Plaintiff's third amended complaint.

## FACTS[1]

Hanh Nguyen was born on August 11, 1994.  She was 16 years old when she filed her original complaint in October 2010 in Santa Clara County Superior Court.[2]  In the original and the first amend complaint, Hanh was represented by her mother and guardian ad litem, Lan Tran.  Hanh's older sister, Kim Nguyen, appeared as guardian ad litem in the second and third amended complaints.  Hanh's father, Liem Nguyen, was named as a plaintiff in earlier complaints, but is not a party to the third amended complaint.  (For clarity, and meaning no disrespect, we will refer to the members of the Nguyen and Tran family by their first names.  Sometimes, we will refer to Lan Tran and Liem Nguyen jointly as "Parents."  We will refer to Hanh and Liem jointly as "Plaintiffs" when discussing the pleadings that named both of them as plaintiffs.)

---

[1] In reviewing the propriety of the trial court's order sustaining WDC's demurrer, we accept as true all factual allegations properly pleaded in the complaint.  (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.)  Accordingly, our summary of the facts is drawn from the material allegations of the operative pleading, the third amended complaint.  (*Ibid.*)  And since a demurrer admits the truth of all facts properly pleaded, we will refer to the allegations of the third amended complaint without sometimes using the prefatory phrase "plaintiff alleges," to avoid undue repetition of the phrase.

[2] As we shall explain under "Procedural History," before filing her action in Santa Clara County Superior Court, plaintiff filed an original and a first amended complaint in Alameda County Superior Court alleging the same claims.  When describing the pleadings, we will use the designations assigned to the complaints in Santa Clara County (i.e., original, first amended, second amended, etc.), keeping in mind that Plaintiff made two prior attempts to plead in Alameda County.

Hanh's mother, Lan, worked for WDC at its Santa Clara manufacturing facility from approximately 1987 until 1998. Lan worked in "clean rooms" and elsewhere at WDC "where she used and/or was exposed for prolonged periods to teratogenic,[3] and reproductively toxic chemicals" that WDC used to assemble and to manufacture its products. "Teratogenic chemicals are known to cause severe harm to unborn children." Lan worked at WDC while she was pregnant with Hanh. During Lan's pregnancy, Hanh "was 'present' in 'clean rooms' and elsewhere" at WDC "where she was exposed during the crucial months of growth in her mother's womb, for prolonged periods to teratogenic and reproductively toxic chemicals."

"Upon information and belief," the third amended complaint lists chemicals or classes of chemicals that were commonly used in the semiconductor industry. "Due to the nature of semiconductor manufacturing, multiple chemicals are used at the same time and in the same space, such that exposure to individual chemical substances cannot be separated or singled out in a meaningful way; the impact of exposure must take into account both individual chemicals and . . . exposure to numerous chemicals simultaneously."

The third amended complaint alleges that the " 'clean rooms' " were only clean for WDC's products, not its employees. There was no ventilation system to protect workers from inhaling fumes emitted by the chemicals, which remained in the re-circulated air in the clean rooms. And the protective clothing the employees wore protected the products from the workers and their clothing, but it did not protect the workers from the chemicals. Lan absorbed chemicals that were in the workplace into her body through her skin and by inhalation. The exposure to these chemicals alone or in combination caused Hanh to sustain "birth defects" and "severe and permanent injuries, including . . . agenesis of the

---

[3] "Teratogenic" means "tending to cause developmental malformations . . . ." (Webster's 3d New Internat. Dict. (1993) p. 2358, col. 1.)

corpus callosum."[4] The chemicals listed in the complaint were a substantial factor in causing Hanh's injuries.

Based on the scientific literature and government bulletins that were available beginning in the early 1980's, WDC knew or should have known of the reproductively toxic nature of the chemicals used in its facility. In the 1980's, chemical manufacturers warned semiconductor companies about the toxicity associated with their chemical products. The third amended complaint includes citations to several journal articles, scientific symposiums and presentations, and government bulletins that were published between 1981 and 1996 regarding animal studies on chemicals used in the semiconductor industry. The complaint describes: (1) a 1981 article in the journal Toxicology, which reported that toxicology studies on mice had "demonstrated that ethylene glycol monomethyl ether, . . . , caused an increased incidence of fetal malformations and fetal death"; (2) a 1982 study done by the National Institute of Occupational Safety and Health on the effects of 2-ethoxyethanol on pregnant rats that allegedly demonstrated a relationship between exposure to the chemical and miscarriages, skeletal and cardiovascular malformations, and fetal death, the results of which were published in the journal Drug and Chemical Toxicology; (3) a 1983 article in the journal Toxicology describing "the adverse effects of ethylene glycol ethers on the male reproductive system"; and (4) a 1984 article that was a "compilation of over forty scholarly articles addressing the toxicity and reproductive hazards associated with certain glycol ethers," which was published in Environmental Health Perspectives.

The third amended complaint also describes three epidemiological studies that examined the incidence of miscarriage among women who worked in the semiconductor

---

[4] "Agenesis" means the "[a]bsence or failure of formation of any part" of the body; the "corpus callosum" is the "great commissural plate of nerve fibers" that connects the two hemispheres of the brain. (PDR Medical Dictionary (2d ed. 2000) pp. 34, col. 2 & 412, col. 2.)

industry. These studies include: (1) a 1988 study involving employees at Digital Equipment Corporation, the results of which were reported in the Journal of Occupational Medicine; (2) a 1989 study done at the University of California at Davis on behalf of the Semiconductor Industry Association (SIA) that "evaluated thousands of workers at 14 different companies nationwide" and "generated 11 papers published in the peer reviewed medical literature," including three articles in the American Journal of Industrial Medicine; and (3) a study done at Johns Hopkins University on behalf of IBM Corporation, the results of which were published in Occupational Hygiene and the American Journal of Epidemiology in 1996.

In 1983 and again in 1994, the National Institute of Occupational Safety and Health (NIOSH) sponsored two symposiums that included presentations on the reproductive effects of glycol ethers. Based on animal studies, a May 1983 NIOSH bulletin recommended that two of the chemicals Hanh's mother was exposed to (2-methoxyethanol and 2-ethoxyethanol) "be regarded in the workplace as having the potential to cause adverse reproductive effects in male and female workers." A 1982 alert from the California Hazard Evaluation System and Information Service (HESIS) warned that two glycol ethers were known to cause birth defects. HESIS fact sheets issued in 1987 and 1989 "explained that low-level exposure to certain glycol ethers can lead to birth defects." Those fact sheets also recommended methods for reducing worker exposure. WDC was aware of these studies, articles, bulletins, and alerts before Hanh was conceived. However, none of this information was known to—or even accessible to—Parents before December 2008.

As a semiconductor manufacturer, WDC "knew or should have known of the hazardous nature of the . . . chemicals and processes used in the 'clean rooms' and other areas of its . . . facility." "[A]s a matter of good occupational medicine practice," WDC had a duty to investigate and understand the reproductive hazards associated with each substance used, and substitute safer substances or provide personal protective equipment

6

and engineering controls. WDC had a statutory duty to disclose material facts relating to the toxicity of many of the chemicals used in its workplace under the California Hazardous Substances Information and Training Act (Lab. Code, § 6360 et seq.; see also Cal. Code Regs., tit. 8, § 339). WDC "concealed and/or misrepresented the . . . reproductively toxic nature of chemicals used [to manufacture] its products," and "failed to warn . . . its employees" of the toxic nature of the chemicals used. WDC also failed to disclose that very low levels of exposure were reproductively toxic. WDC and other semiconductor manufacturers "affirmatively misled and withheld relevant information from their employees and other persons present at their facilities including employees' unborn children by disregarding and/or downplaying the adverse reproductive, developmental and long-term health implications of multiple exposures to" these chemicals.

"On information and belief," Plaintiff alleges that WDC offered health services to its employees, including Lan. These health services included "a detailed review of [her] medical and reproductive history and industrial hygiene assessment and monitoring." The health care providers included "nurses and physicians affiliated with and/or employed by" WDC who concealed and suppressed material facts from Lan regarding the "reproductively toxic"[5] nature of the chemicals she worked with and "misrepresented by omission that [Lan's] workplace was safe."

The third amended complaint alleges that Parents "undertook a reasonable investigation to discover the cause of Hanh's injuries." Parents asked Hanh's treating physicians what the cause was and her doctors said they "were unaware of any cause." Parents had Hanh undergo a "lymphocyte karyotyping study, which did not reveal a

---

[5] This is the phrase Plaintiff uses in her third amended complaint.

7

genetic cause of the hydrocephalus[6] or absent corpus collosum [*sic*]." Hanh underwent "other medical tests, including CT scans, MRI[']s, and electroencephalograms, none of which determined the cause of her injuries." "At no time prior to December 2008, did any" of Hanh's doctors "ever inform, advise, suggest or otherwise imply that parental occupational exposure . . . was a potential contributing cause of [Hanh's] injuries and birth defects. Parents reasonably relied on the skill and judgment of Hanh's doctors and had "no reason to further investigate, inquire into or suspect any occupational cause of [Hanh's] condition . . . ."

The third amended complaint also alleges that "In or after December 2008," when Hanh was 14 years old, unnamed members of her family "heard on the radio that attorneys were investigating cases of birth defects caused by chemical exposures in the semiconductor industry." Lan and Kim contacted the attorneys and retained them to investigate whether Hanh's injuries "were caused by parental occupational exposure to . . . toxic chemicals" at WDC. Through that investigation, Parents "learned for the first time, in or after December 2008," that (1) the manufacturing chemicals at WDC were "reproductively toxic"; (2) Lan's "exposure levels were sufficiently high to cause . . . birth defects"; and (3) Hanh's injuries were caused by chemical exposures at WDC. "At no time prior to retaining [counsel]," did Parents or Kim suspect that Hanh's injuries were caused by chemical exposures at WDC.

---

[6] Hydrocephalus is a "condition marked by an excessive accumulation of cerebrospinal fluid resulting in dilation of the cerebral ventricles and raised intracranial pressure." (PDR Medical Dictionary (2d ed. 2000) p. 839, col. 2.)

8

*Pleadings Filed in Alameda and Orange Counties*[7]

In December 2009, Hanh (by and through her guardian ad litem Lan) and Liem filed a complaint in Alameda County. WDC demurred to the original Alameda County complaint on a variety of grounds, including that it was barred by the statute of limitations. WDC also filed a motion to transfer the action to Orange County since its principal place of business was in Orange County. Instead of opposing the demurrer, Plaintiffs filed a first amended complaint.

The court granted the motion to transfer and the case was transferred to Orange County in May 2010. WDC demurred to the first amended complaint in Orange County. Three days earlier, Plaintiffs had dismissed the entire action.

*First Pleading Filed in Santa Clara County and Demurrer to that Complaint*

Hanh and Liem filed their original Santa Clara County complaint on October 25, 2010. The only named defendant was WDC. The complaint contained causes of action on behalf of Hanh for negligence, strict liability, willful misconduct, misrepresentation, premises liability, and products liability. It also contained causes of action on behalf of Liem for negligent and intentional infliction of emotional distress.

WDC filed a demurrer, which argued that the complaint failed to state a cause of action because it failed to specify the chemicals at issue and failed on other grounds. WDC did not rely on a statute of limitations defense at that time. Plaintiffs opposed the demurrer. Lan filed an application to be appointed Hanh's guardian ad litem, which alleged that Hanh sustained "[p]ersonal injuries and mental disability as a result of [her]

---

[7] WDC's request for judicial notice of court documents filed in Alameda and Orange Counties (WDC's exhibits 2 through 5) is hereby granted. (Evid. Code, §§ 452, subd. (d), 459.)

9

mother's exposure to chemicals during and prior to pregnancy" and was "mentally disabled," "unable to care for herself," and "depends on her parents 100%."

The court sustained the demurrer with leave to amend on the grounds that (1) the complaint did not specify the chemicals that caused Hanh's injuries; (2) the cause of action for misrepresentation did not specifically plead fraud; and (3) Liem had failed to state necessary elements to support his emotional distress claims.

***First Amended Complaint and Demurrer to First Amended Complaint***

In July 2011, Plaintiffs filed their first amended complaint, which contained the same causes of action as the original complaint. WDC demurred again, raising the same issues as before, this time including its statute of limitations defenses. WDC argued that Hanh's claims were barred by the six-year limitations period in section 340.4 for birth and pre-birth injuries because the complaint was not filed within six years of Hanh's birth. With respect to Liem's claims for emotional distress, WDC argued that those claims were barred by the two-year limitations period in section 335.1. WDC also argued that Plaintiffs had failed to plead sufficient facts to demonstrate delayed accrual under the discovery rule.

In opposition, Hanh argued that her claims were subject to the two-year limitations period in section 340.8 for injuries caused by exposure to hazardous materials, not the limitations period (§ 340.4) for injury caused before or during birth. She also argued that her claims were timely under section 340.8 based on both tolling for minority and insanity (§ 352) and delayed accrual under the discovery rule, and that even if her claims were subject to section 340.4, they were not time-barred under the discovery rule. Liem argued that his claims were timely under the discovery rule.

In December 2011, the court sustained the demurrers with leave to amend based on the statute of limitations. The court found that pursuant to "section 340.4, [Hanh's]

10

lawsuit is time-barred as there are insufficient allegations of delayed discovery." The court also found that Liem's emotional distress claims were time-barred.

***Second Amended Complaint and Demurrer to Second Amended Complaint***

Hanh and Liem filed their second amended complaint in December 2011. The second amended complaint alleged, in paragraph 62, that "the health service providers affiliated with and/or employed by [WDC] falsely represented to Lan Tran that there was no causal connection between her occupational chemical exposure and [Hanh's] injuries." Paragraph 63 alleged that Lan "relied on the advice and information provided by reproductive health service providers affiliated with and/or employed by [WDC] to her detriment." (These allegations from paragraph 62 and 63 were deleted from the third amended complaint.)

WDC demurred to the second amended complaint. It attacked Plaintiffs' causes of action on statute of limitations grounds and raised other challenges to Liem's emotional distress claims. WDC again argued that Hanh's claims were time-barred under section 340.4 and that Plaintiffs could not plead delayed discovery because Lan suspected, years before Plaintiffs filed suit, that the chemicals she worked with caused Hanh's injuries. WDC relied on the allegations that Lan spoke with an unidentified person "affiliated with and/or employed by" WDC about whether the chemicals may have been the cause of Hanh's injuries. WDC argued: "it is clear . . . that plaintiffs were on inquiry notice that chemical exposure may have been the cause" more than six years before they filed suit. In addition, WDC claimed that "the studies and scientific literature purportedly linking chemical exposure to birth defects that their lawyers located in 2009 had been publically available since the 1980s" and that this material would have been available to Hanh's doctors or to any lawyer that Parents "would have retained in the 1990s, just as they were available to plaintiffs' lawyers in 2009." WDC also claimed that the second amended complaint did not allege who Lan spoke to at WDC, that person's qualifications or

11

authority to opine on chemical exposures, whether that person even worked for WDC, or when the conversation took place. WDC argued that Lan "presumably" spoke with the WDC-affiliated person "in or before 1998" when she was still employed by WDC and that Plaintiffs' allegations of fraudulent concealment were inadequate to save their claims because they were not pleaded with particularity.

Plaintiffs opposed the demurrer, arguing that (1) Hanh's claims were not time-barred under section 340.8, (2) they had sufficiently pleaded delayed accrual under the discovery rule, and (3) WDC's misrepresentations prevented Parents from suspecting wrongdoing sooner.

The court sustained the demurrer to Hanh's causes of action with leave to amend. The court found that Hanh's claims were time-barred. Based on the allegations (1) that health care providers affiliated with WDC had falsely misrepresented that there was no causal connection between Lan's work and Hanh's injuries, and (2) that Lan stopped working for WDC in 1998, the court concluded that the alleged representations by the health care providers "would have happened no later than 1998. At that time, Lan would have had at least a suspicion that there could be a causal connection between her occupational chemical exposures and Hanh's injuries, and the statute of limitations would have begun to run." The court also found that Hanh's fraudulent concealment allegations were not pleaded with sufficient particularity. The court sustained the demurrers to Liem's claims for emotional distress without leave to amend on grounds unrelated to the statute of limitations.

***Third Amended Complaint and Demurrer to Third Amend Complaint***

Hanh filed her third amended complaint in April 2012. Liem's emotional distress claims were deleted from this iteration of the complaint. As we have noted, the third amended complaint also dropped the allegations in paragraphs 62 and 63 of the second

amended complaint regarding Lan's contact with health care providers affiliated with WDC.

WDC demurred again, arguing that the entire action was time-barred under section 340.4. Noting the omission of paragraphs 62 and 63, WDC argued that Hanh was bound by her prior pleading under the " 'sham-pleading doctrine.' " WDC also argued that the third amended complaint did not add the particularity necessary to plead fraudulent concealment.

Plaintiff opposed the demurrer, arguing that (1) the appropriate statute of limitations is the two-year period for injuries due to exposure to hazardous substances in section 340.8; (2) her pleading sufficiently pleaded delayed discovery as well as fraudulent concealment; and (3) WDC was estopped from relying on the statute of limitations. With respect to the estoppel argument, Plaintiff specifically argued that (1) WDC knew the chemicals it used were hazardous, (2) it actively concealed the hazard from Lan, and (3) when Parents inquired into possible causes of Hanh's injuries, WDC represented that the chemicals did not cause Hanh's injuries.

The court sustained WDC's demurrer to the third amended complaint without leave to amend. The court observed that the third amended complaint omitted facts that "previously demonstrated the inapplicability of the . . . discovery rule" and held that it could disregard that omission. The court held that since the omitted allegations demonstrated that Lan "at least had a suspicion that there could have been a causal connection between her occupational exposure and [Hanh's] injuries no later than 1998," the action was time-barred.

Under the sham pleading doctrine, admissions in a complaint that "has been superseded by an amended pleading remain within the court's cognizance and the alteration of such statements by amendment designed to conceal fundamental vulnerabilities in a plaintiff's case will not be accepted." (*Lockton v. O'Rourke* (2010)

13

184 Cal.App.4th 1051, 1061.)  We too shall treat the third amended complaint as if it had included paragraphs 62 and 63 of the second amended complaint.

## DISCUSSION

### I.  *Standard of Review*

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules:  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); see also *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075.)  In addition to accepting as true all properly pleaded material facts, we also accept as true those facts that may be implied or inferred from facts expressly alleged.  (*City of Morgan Hill v. Bay Area Air Quality Management Dist*. (2004) 118 Cal.App.4th 861, 869-870.)

"It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he [or she] describes the defendant's conduct.  A demurrer tests only the legal sufficiency of the pleading."  (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213.)  Thus, as noted, "the facts alleged in the pleading are deemed to be true, however improbable they may be."

14

(*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604; see also *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [court reviewing propriety of ruling on demurrer is not concerned with the "plaintiff's ability to prove . . . allegations, or the possible difficulty in making such proof"].)

On appeal, we will affirm a "trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808, fn. omitted.) Thus, "we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]" (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)

## II. *Statute of Limitations Governing Hanh's Claims*

Hanh contends the court erred when it held the applicable statute of limitations is the six-year period in section 340.4, which applies to personal injury claims based on birth and pre-birth injuries. Hanh asserts that the applicable statute of limitations is the two-year period in section 340.8, which applies to injuries "based upon exposure to a hazardous material or toxic substance." (§ 340.8) Hanh argues that "[o]n their face," both section 340.4 and section 340.8 "appear to govern an action for birth or pre-birth injuries caused by exposure to hazardous materials or toxic substances" and that section 340.8, the later-enacted, more specific statute, controls over the earlier-enacted, more general provision in section 340.4. (For clarity, we will sometimes use the parenthetical "(pre-birth injuries)" after references to section 340.4 and the parenthetical "(toxic exposures)" after references to section 340.8.)

### A. General Principles Regarding Statutes of Limitations

As the Supreme Court explained in *Pooshs v. Phillip Morris USA, Inc.* (2011) 51 Cal.4th 788 (*Pooshs*), a "statute of limitations strikes a balance among conflicting

15

interests. If it is unfair to bar a plaintiff from recovering on a meritorious claim, it is also unfair to require a defendant to defend against possibly false allegations concerning long-forgotten events, when important evidence may no longer be available. Thus, statutes of limitations are not mere technical defenses, allowing wrongdoers to avoid accountability. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395-397 . . . [(*Norgart*)].) Rather, they mark the point where, in the judgment of the Legislature, the equities tip in favor of the defendant (who may be innocent of wrongdoing) and against the plaintiff (who failed to take prompt action): '[T]he period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.' " (*Pooshs*, at p. 797, quoting *Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 463-464.)

"There are several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.' [Citations.] A statute of limitations also stimulates plaintiffs to pursue their claims diligently. [Citations.] A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).) Statutes of limitations are " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " (*Adams v. Paul* (1995) 11 Cal.4th 583, 592.) Once the statute of limitations runs, " 'the right to be free of stale claims . . . comes to prevail over the right to prosecute them.' " (*Ibid.*)

"Critical to applying a statute of limitations is determining the point when the limitations period begins to run. Generally, a plaintiff must file suit within a designated period after the cause of action *accrues*. (. . . § 312.) A cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and

16

causation." (*Pooshs*, *supra*, 51 Cal.4th at p. 797, citing *Norgart*, *supra*, 21 Cal.4th at p. 397; original italics.)

"The most important exception to [the] general rule regarding accrual of a cause of action is the 'discovery rule,' under which accrual is postponed until the plaintiff 'discovers, or has reason to discover, the cause of action.' [Citation.] Discovery of the cause of action occurs when the plaintiff 'has reason . . . to suspect a factual basis' for the action." (*Pooshs*, *supra*, 51 Cal.4th at p. 797, citing *Norgart*, *supra*, 21 Cal.4th at pp. 397, 398 and *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111 (*Jolly*).) Under the discovery rule,[8] the cause of action accrues "when the plaintiff suspects or should suspect that [the] injury was caused by wrongdoing, that someone has done something wrong to her [or him]." (*Jolly,* at p. 1110.) In other words, "the limitations period begins once the plaintiff 'has notice information of circumstances to put a reasonable person *on inquiry.*' " (*Id.* at pp. 1110-1111, original italics, internal quotations omitted.) " 'The policy reason behind the discovery rule is to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause.' " (*Pooshs*, at pp. 797-798, quoting *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531.) When the plaintiff is a minor, it is the knowledge or lack thereof of the parents that determines when the cause of action accrues. (*Young v. Haines* (1986) 41 Cal.3d 883, 890, fn. 4 (*Young*).)

### B. Section 340.4 – Statute of Limitations for Birth or Pre-Birth Injuries

Section 340.4 provides: "An action by or on behalf of a minor for personal injuries sustained before or in the course of his or her birth must be commenced within six years after the date of birth, and the time the minor is under any disability mentioned

---

[8] The discovery rule is also referred to in the case law and in the parties' briefs as the "delayed discovery rule." (See e.g., *Fox*, *supra*, 35 Cal.4th at p. 803.) For ease of reference, we shall use the term "discovery rule."

in Section 352 shall not be excluded in computing the time limited for the commencement of the action."

Section 352, in turn, provides in relevant part: "(a) If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action." Thus, under the plain language of section 340.4, an action for personal injuries to a minor sustained before or in the course of his or her birth is not tolled by the child's minority or insanity.

Section 340.4 was enacted in 1992; it became operative on January 1, 1994. (Stats. 1992, ch. 163 §§ 16, 161.) Section 340.4 contains language very similar to that of the second clause of former Civil Code section 29, which was enacted in 1941. (Stats. 1941, ch. 337, § 1.) More importantly, as discussed in section III, *post*, the limitations period in section 340.4 is subject to the discovery rule. (*Young*, *supra*, 41 Cal.3d at pp. 892-893 [former Civil Code section 29].)

### C. Section 340.8 – Statute of Limitations for Injury or Illness Based on Exposure to Toxic Substances

Section 340.8 provides in relevant part: "(a) In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later. [¶] [¶] (c) For purposes of this section: [¶] (1) A 'civil action for injury or illness based upon exposure to a hazardous material or toxic substance' does not include an action subject to Section 340.2 [(the limitations period for actions based upon exposure to asbestos)] or 340.5 [(the

18

limitations period for actions based on professional negligence of a health care provider)]. [¶][¶] (d) Nothing in this section shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions not based upon exposure to a hazardous material or toxic substance."

Section 340.8, signed into law on October 12, 2003, became effective on January 1, 2004. (Stats.2003, ch. 873, p. 6398; Cal. Const., art. IV, § 8, subd. (c).)

## D. Section 352 Tolling for Minority and Insanity Applies to Section 340.8

We turn to the question whether section 352 tolling applies to section 304.8 (toxic exposures). "The primary duty of a court when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 . . . (*Woodhead*).) To determine intent, courts turn first to the words themselves, giving them their ordinary and generally accepted meaning. [Citation.] If the language permits more than one reasonable interpretation, the court then looks to extrinsic aids, such as the object to be achieved and the evil to be remedied by the statute, the legislative history, public policy, and the statutory scheme of which the statute is a part. [Citation.] . . . Ultimately, the court must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation leading to absurd consequences. [Citation.]" (*In re Luke W*. (2001) 88 Cal.App.4th 650, 655.)

Unlike section 340.4, which expressly states that section 352 tolling for minority and insanity does not apply to actions for pre-birth and birth injuries, section 340.8 is silent regarding section 352 tolling. To determine whether section 352 applies to section 340.8, we start with the language of section 352, which expressly limits its tolling provision to actions "mentioned in Chapter 3 (commencing with Section 335)." (§ 352.) The reference to "Chapter 3" in section 352 is to chapter 3 (civil actions other than for the

recovery of real property) of title 2 (the time of commencing civil actions) of part 2 (civil actions) of the Code of Civil Procedure. Chapter 3 includes sections 335 through 349¾. "Title 2 of part 2 of the Code of Civil Procedure prescribes the limitations periods during which '[c]ivil actions, without exception,' must be commenced after they accrue, 'unless . . . a different limitation is prescribed by statute.' (§ 312.) Chapter 3 of that title and part . . . sets forth the limitations periods for actions other than for the recovery of real property. (§§ 335-349[¾].) Section 352 appears in chapter 4 of that title and part, which sets forth certain general provisions applicable to limitations periods, including grounds for tolling. (See, e.g., §§ 351-356.)" (*Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1455.) Since section 340.8 is in chapter 3 and since section 340.8 does not expressly exclude section 352 tolling, we conclude that the tolling provision in section 352 for minority and insanity applies to section 340.8.

### E. Analysis

The operative pleading discloses three possible accrual dates: (1) August 11, 1994 (Hanh's date of birth); (2) no later than December 31, 1998 (the last possible date Lan could have asked medical personnel affiliated with WDC whether Hanh's injuries could have been caused by exposure to hazardous chemicals at WDC); and (3) December 2008 (when Hanh's family members learned that her attorneys were investigating cases involving birth defects due to chemical exposures in the semiconductor industry). We will examine each of these accrual dates as they relate to the limitations periods in sections 340.4 and 340.8 to determine whether there are any possible analyses under which Hanh's claims may be timely.

### 1. *Assuming accrual on Hanh's birth date (August 11, 1994), her claims were time-barred*

When Hanh was born on August 11, 1994, section 340.8 (toxic exposures) had not yet been enacted. Actions for pre-birth injuries, however, were subject to the limitations period in section 340.4. Under section 340.4, Hanh was required to bring her claims no later than six years from the date of her birth, or by August 11, 2000. As noted earlier, the section 340.4 limitations period is not tolled by minority or mental incompetency. (§ 340.4) Therefore, assuming accrual on Hanh's birth date, and unless the limitations period was tolled for a reason other than minority or mental incompetency, Hanh's original complaint, filed on October 25, 2010, was untimely by more than 10 years under section 340.4.

### 2. *Assuming delayed accrual until December 31, 1998, Hanh's claims were timely under section 340.8*

As we have noted, section 340.4 (pre-birth injuries) is subject to delayed accrual under the discovery rule. (*Young*, *supra*, 41 Cal.3d at pp. 892-893.) Assuming delayed accrual until December 31, 1998—the last possible date that "health service providers affiliated with . . . [WDC] falsely represented to Lan . . . that there was no causal connection between [Lan's] occupational chemical exposure and [Hanh's] injuries"— Hanh was required to file suit under section 340.4 within six years of the delayed accrual date, or no later than December 31, 2004. Thus, assuming delayed accrual until December 31, 1998, Hanh's complaint, filed in October 2010, was untimely under section 340.4 by more than 5 years. But, as we will explain below, continuing to assume delayed accrual until December 31, 1998, Hanh's claims were timely under section 340.8 (toxic exposures).

Hanh contends "because section 340.8 [(toxic exposures)] did not become operative until January 1, 2004, it will apply only if Hanh's cause[s] of action [were] not already time-barred under section 340.4 when section 340.8 became operative." Statutes

generally operate only prospectively, and "[a] new statute that enlarges a statutory limitations period [only] applies to actions that are not already barred by the original limitations period at the time the new statute goes into effect." (*Andonagui v. May Dept. Stores Co.* (2005) 128 Cal.App.4th 435, 439-440.) For example, in *Krupnick v. Duke Energy Morro Bay* (2004) 115 Cal.App.4th 1026, the plaintiff sustained personal injuries on January 26, 2001, and filed his action on January 8, 2003. (*Id.* at p. 1027.) Under the one-year statute of limitations that applied on the date he was injured (former section 340, subd. (3)), the plaintiff had until January 26, 2002, to file his complaint. (*Id.* at p. 1028.) The court held that section 335.1, which enlarged the limitations period for personal injury claims from one to two years, did not save the plaintiff's action from the running of the statute of limitations because his claim was already time-barred when the new two-year statute took effect on January 1, 2003, and the new statute did not operate retroactively to revive his claim. (*Krupnick*, at pp. 1028-1029.)

Assuming delayed accrual under the discovery rule until December 31, 1998, Hanh's claims were subject to the six-year limitations period in section 340.4 (pre-birth injuries). Under that statute, she had until December 31, 2004 to file suit. Section 340.8 (toxic exposures) went into effect prior to that date, on January 1, 2004. Therefore, assuming delayed accrual until December 31, 1998, and that the new statute (section 340.8) applies to Hanh's claims, Hanh would be entitled to rely on the longer limitations period in section 340.8 (toxic exposures) since Hanh's claims had not yet expired when section 340.8 took effect. And although section 340.8 (toxic exposures) contains a two-year statute of limitations, it effectively provides for a "longer limitations period" since, unlike section 340.4 (pre-birth injuries), it is subject to tolling for minority and insanity (§ 352).

### 3. *Assuming delayed accrual until December 2008, Hanh's claims were timely under both sections 340.4 and 340.8*

Turning to the third possible accrual date, December 2008 (when Hanh's family members heard about her attorney's investigations on the radio): assuming delayed accrual under the discovery rule, both section 340.4 (pre-birth injuries) and section 340.8 (toxic exposures) were in effect at that time. Under section 340.4, Hanh was required to file suit within six years of discovery, or no later than December 2014. Under section 340.8, Hanh was required to file suit within two years of discovery, or no later than December 2010. Thus, if the accrual of Hanh's causes of action was delayed until December 2008, then her complaint, filed in October 2010, was timely under both section 340.4 (pre-birth injuries) and section 340.8 (toxic exposures) without any tolling for minority or mental incompetency.

In summary, our analysis reveals two ways in which Hanh's claims may have been timely filed. First, if the accrual of Hanh's causes of action was delayed under the discovery rule until December 31, 1998, and if her claims are subject to section 340.8, then she would be able to state a cause of action, since her claims had not expired when section 340.8 took effect on January 1, 2004. And by operation of section 352, Hanh's claims were tolled until August 11, 2012, when she turned 18. Under this analysis, Hanh's complaint filed in October 2010, was timely. Second, if the accrual of Hanh's claims was delayed until December 2008 when her family members heard about her attorney's investigations on the radio, then her causes of action were timely under both section 340.4 and 340.8 and we need not determine which statute of limitations is controlling in this case.

### III. *Hanh's Claims Are Subject to the Limitations Period in Section 340.8 (Toxic Exposures)*

We next address the question whether, as of January 1, 2004 (the effective date for section 340.8), Hanh's claims were subject to the limitations period in section 340.4 (pre-

birth injuries) or section 340.8 (toxic exposures). This is a question of statutory construction, which we review de novo. (*People ex rel. Lockyer v. Shamrock Foods* (2000) 24 Cal.4th 415, 432.) ' '[A]s in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of the statute.' [Citation.] In determining such intent, we begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation.] 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' [Citation.] 'But when the statutory language is ambiguous, "the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes." ' [Citation.] [¶] In construing a statute, we must also consider ' "the object to be achieved and the evil to be prevented by the legislation." ' [Citation.]" (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192-193 (*Zamudio*).) We " 'avoid a construction the would produce absurd consequences, which we presume the Legislature did not intend.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 406.)

Section 340.4 applies to "an action by or on behalf of a minor for personal injuries sustained before or in the course of his or her birth." In *Young*, the Supreme Court explained that former Civil Code section 29 (the predecessor to section 340.4), "enacted in 1872, abolished the common law rule that an unborn child has no independent existence and, therefore, no right of action for injuries suffered before its birth. [Citation.] That section created the statutory authorization for a child to recover for such injuries in the event of its subsequent birth. [Citation.] As originally enacted, it applied to all actions which might be brought after birth and thus did not provide any single statute of limitations for these actions. The applicable statutes of limitations were set forth in other statutes, depending on the nature of the cause of action. Furthermore, section 352, also enacted in 1872, established a general rule that the statute of limitations

24

for most actions was tolled during the plaintiff's minority." (*Young*, *supra*, 41 Cal.3d at p. 892, footnotes omitted.)

In 1941, shortly after an appellate court suggested in dictum "that an action for prenatal injuries would be tolled during the child's minority," the "Legislature amended [former Civil Code] section 29 to state expressly that section 352 tolling did not apply to actions brought under that statute" and that the limitations period for such actions was six years. (*Young*, 41 Cal.3d at p. 892, citing Stats. 1941, ch. 337, § 1, p. 1579.) In *Olivas v. Weiner* (1954) 127 Cal.App.2d 597, 599, the court explained, "The Legislature undoubtedly concluded that to permit such an action to be filed up to 22 years after the child's birth, i.e., within one year after it reached majority,[9] placed an unreasonable burden upon the defendant to locate witnesses and to produce evidence in defense of the charges after the lapse of such a long period. The Legislature decided that six years was a reasonable time within which to bring such an action."

But "the six-year rule was not absolute" and courts have held that " 'the time limitation contained in [former Civil Code] section 29 was intended by the Legislature as a procedural statute of limitations subject to being extended by any legal ground not specifically excluded in the section itself' [citation] – including the common law delayed-discovery rule." (*Young*, *supra*, 41 Cal.3d at pp. 892-893, quoting *Myers v. Stevenson* (1954) 125 Cal.App.2d 399, 407.) In 1992, the Legislature moved the limitations provision in former Civil Code section 29 to the Code of Civil Procedure and reenacted it without substantive change as section 340.4. (Cal. Law Revision Com. com., 13C West's Ann. Code Civ. Proc. (2006 ed.) foll. § 340.4, p. 192.)

Hanh argues that the plain meaning of the "clear language" in section 340.8 supports the conclusion that it applies in this case. Section 340.8 applies to "*any* civil action for injury or illness" and actions for wrongful death "based upon exposure to a

---

[9] When *Olivas v. Weiner* was decided, the age of majority was 21. (Fam. Code, § 6502.)

hazardous material or toxic substance." (§ 340.8, subds. (a), (b); italics added.)

Subdivision (a) of section 340.8 provides that "any civil action for injury or illness based upon exposure to a hazardous material or toxic substance" is subject to a two-year limitations period. It also provides for two alternative accrual dates: "either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later." Thus, subdivision (a) of section 340.8 expressly provides that injury claims based upon toxic exposures are subject to the discovery rule. Subdivision (b) of section 340.8 sets forth the same two-year limitations period for wrongful death actions "based upon exposure to a hazardous material or toxic substance" and provides that such wrongful death actions are also subject to the discovery rule.

As we have noted, section 340.8 applies to "*any* civil action for injury or illness based upon exposure to a hazardous material or toxic substance." (§ 340.8, subd. (a); italics added.) "As our Supreme Court has stated, '[t]he word "any" means without limit and no matter what kind.' (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.) 'From the earliest days of statehood [the court has] interpreted "any" to be broad, general and all embracing.' (*California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976) 17 Cal.3d 190, 195 . . . , citing *Davidson v. Dallas* (1857) 8 Cal. 227, 239; . . . .)" (*People v. Dunbar* (2012) 209 Cal.App.4th 114, 117-118; accord, *Department of California Highway Patrol v. Superior Court* (2008) 158 Cal.App.4th 726, 736 [use of "the word 'any' . . . in a statute unambiguously reflects a legislative intent for that statute to have a broad application."].)

When section 340.8 was enacted in 2004, personal injury claims were subject to different limitations periods based in part on the age of the plaintiff at the time of injury. (See §§ 335.1 (adults and minors), 352 (tolling for minority), 340.4 (birth and pre-birth

26

injuries).)  The use of the broad term "any" in section 340.8, subdivision (a) indicates that the statute was intended to have a broad application and that it applies to any claim for "injury or illness based upon exposure to a hazardous material or toxic substance," regardless of the plaintiff's age at the time of injury.

Subdivision (c)(1) of section 340.8 sets forth two exceptions to the limitations period in section 340.8, subdivisions (a).  It provides that the phrase a "civil action for injury or illness based upon exposure to a hazardous material or toxic substance," which is used in subdivision (a) of the statute "does not include an action subject to Section 340.2" (the statute of limitations for injury, illness, or wrongful death based on exposure to asbestos) "or [Section] 340.5" (the statute of limitations for actions based on the professional negligence of a health care provider).  While subdivision (c)(1) expressly excludes those two types of claims from section 340.8's reach, it does not mention actions for birth or pre-birth injuries "based upon exposure to a hazardous material or toxic substance."

Hanh relies on the well-settled rule that "[t]he Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof."  (*People v. Harrison* (1989) 48 Cal.3d 321, 329.)  Hanh also relies on "the familiar rule of construction, *expressio unius est exclusio alterius*, [that] where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed."[10]  (*In re Michael G.* (1988) 44 Cal.3d 283, 291.)  Hanh argues that "the Legislature was presumably aware of section 340.4 when it enacted section 340.8, just as it was . . . aware of sections 340.2 and 340.5" and that if it had "wanted to exempt actions subject to section 340.4 from the broad scope of section 340.8, . . . it could easily have done so."  Hanh asserts that because the

---

[10]  This rule does not apply "where its operation would contradict a discernible and contrary legislative intent."  (*In re Michael G.*, *supra*, 44 Cal.3d at p. 291.)  We do not discern any legislative intent that precludes application of the rule here.

Legislature did not do so, it demonstrated its intent that actions for pre-birth and birth injuries caused by exposures to toxic substances be governed by section 340.8, not section 340.4.

WDC notes that there is no express language in section 340.8 stating that it operates to change, supersede or limit section 340.4 (pre-birth injuries). In arguing that section 340.4 applies to this case, WDC relies on the following language from *Zamudio*, *supra*, 23 Cal.4th at page 199: "We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied. [Citation.] Rather, we must assume that, when enacting [the statute at issue], the Legislature was aware of existing related laws and intended to maintain a consistent body of rules."

The uncodified section of the chaptered bill that added section 340.8 provides: "It is the intent of the Legislature to codify the rulings in Jolly v. Eli Lilly & Co. . . . 44 Cal.3d 1103, Norgart v. Upjohn Co. . . . 21 Cal.4th 383 . . . , and Clark v. Baxter HealthCare Corp. (2000) 83 Cal.App.4th 1048 . . . , in subdivisions (a) and (b) of Section 340.8 of the Code of Civil Procedure, as set forth in this measure, and to disapprove the ruling [in] McKelvey v. Boeing North American, Inc. (1999) 74 Cal.App.4th 151 . . . , to the extent the ruling in McKelvey is inconsistent with paragraph (2) of subdivision (c) of Section 340.8. . . ." (Stats. 2003, ch. 873, § 2.) Subdivision (c)(2) of section 340.8 provides: "Media reports regarding the hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another."

*Jolly*, *Norgart*, and *Clark* applied the common law discovery rule. (*Jolly*, *supra*, 44 Cal.3d at pp. 1110-1114; *Norgart*, *supra*, 21 Cal.4th at pp. 404-407 [court assumes discovery rule may govern accrual of a wrongful death action]; *Clark v. Baxter HealthCare Corp.*, *supra*, 83 Cal.App.4th at pp. 1057-1060.) Thus, the Legislature

28

stated, in the uncodified portion of the statute, that one of its purposes in enacting section 340.8 was to codify the discovery rule in cases involving exposures to hazardous materials and toxic substances.

While the Legislature did not expressly state that it enacted section 340.8 in denigration of—or as an exception to—section 340.4, we think such a conclusion is necessarily implied from the broad language of section 340.8. (*Zamudio*, *supra*, 23 Cal.4th at p. 199.) As we have noted, section 340.8 applies to "any" action for injury or illness based upon exposure to a hazardous material or toxic substance. It expressly provides for delayed accrual of the cause of action under the discovery rule, and says that media reports alone are not enough to trigger the statute of limitations under the discovery rule. And while it exempts other types of claims from its coverage, it does not exempt birth or pre-birth injuries. All of these provisions in section 340.8 support the conclusion that the Legislature intended section 340.8 to have broad application to all claims based upon exposure to hazardous materials or toxic substances, including birth and pre-birth injuries.

Moreover, subdivision (d) of section 340.8 provides: "Nothing in this section shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions not based upon exposure to a hazardous material or toxic substance." This language supports the conclusion that section 340.8 was intended to change existing law regarding the limitations periods for actions "based upon exposure to a hazardous material or toxic substance," but not other types of actions.

WDC argues that "applying Section 340.8 to [Plaintiff's] claims without any indication the Legislature intended it would lead to absurd results. Under [Plaintiff's] theory, a prenatal injury resulting from chemical exposure would carry a 20-year statute of limitations, whereas a prenatal injury resulting from a drug, or a medical device, or other exposure would have a six-year statute of limitations. There is absolutely no evidence that the Legislature intended to carve out a particular subset of pre-birth

29

personal injury cases and dramatically extend the statute of limitations for those cases."
We are not persuaded that our construction of section 340.8 will lead to absurd results.
As the Supreme Court stated in *Young*, the six-year rule in section 340.4 is not absolute
since claims for birth and pre-birth injuries are subject to delayed accrual under the
discovery rule. (*Young*, *supra*, 41 Cal.3d 892-893.) Thus, each case turns on facts
related to its delayed accrual. As discussed below, *Young* also held that section 340.4
does not apply to claims for birth and pre-birth injuries based on medical malpractice.
(*Young*, at pp. 892-894.) Thus, it is clear that section 340.4 does not apply to all claims
alleging birth or pre-birth injuries.

 In *Young*, the issue was which statute of limitations applies to "an action for
injuries incurred during birth as a result of medical malpractice": former Civil Code
section 29 (the limitations period for actions based on pre-birth and birth injuries) or
section 340.5 (the limitations period for medical malpractice actions). (*Young*, *supra*,
41 Cal.3d at p. 889.). The plaintiff in *Young* was born in July 1972 and filed her
complaint in May 1981, when she was almost nine years old. (*Ibid.*) The plaintiff
alleged she did not discover the cause of her injuries until July 1980, when a doctor told
her mother they " 'were a result of hypoxic birth trauma.' " (*Id.* at p. 890.) The
defendants (doctors, a hospital, and other health care providers) argued that the action
was barred by section 340.5 (medical malpractice), which required that the action be filed
no later than the minor plaintiff's eighth birthday. The plaintiff argued that the applicable
statute of limitations was former Civil Code section 29 (pre-birth and birth injuries),
which was subject to the discovery rule, and that her action was timely since it was filed
within six years of discovery. (*Id.* at pp. 889-890.) The court concluded that section
340.5 (medical malpractice) applied.

 The *Young* court observed that "[o]n their face, both [statutes] appear to govern
this case" since the plaintiff alleged " 'personal injuries sustained prior to or in the course
of . . . birth' " (former Civ. Code, § 29) "based on the negligence of the attending

physicians at the birth" (§ 340.5).  (*Young*, *supra*, 41 Cal.3d at pp. 891-892.)  The court held that "of these two inconsistent statutes, section 340.5 must prevail.  [¶]  The general rule is that 'when a general and particular provision are inconsistent, the latter is paramount to the former.'  (§ 1859.)  At first glance, that rule does not offer any guidance here.  The two statutes on their face are equally specific.  Section 29 governs all actions for prenatal and birth injuries, regardless of their cause.  Section 340.5 governs all actions for injuries caused by medical malpractice, regardless of the nature of the injury.  [¶] However, section 340.5 is a later-enacted statute, intended to cover all personal injury claims arising from medical malpractice.  That statute was adopted as a response to a perceived 'major health care crisis in the State of California attributable to skyrocketing malpractice premium costs and resulting in a potential breakdown of the health delivery system . . . .' "  (*Young*, at p. 894.)  The court reasoned that the "legislative response to this perceived crisis included changes in the rules applicable to personal injury actions by malpractice victims" and that the plain legislative intent "was to treat all malpractice victims differently from other personal injury victims."  (*Ibid.*)  Since section 340.5 was "part of an interrelated legislative scheme enacted to deal specifically with all medical malpractice claims[,]" "it is the later, more specific statute which must be found controlling over an earlier statute, even though the earlier statute would by its terms cover the present situation."  (*Young*, at p. 894; see also *Woods v. Young* (1991) 53 Cal.3d 315, 325 [" 'A specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates' "].)

Like the statutes at issue in *Young*, at first glance, both sections 340.4 and 340.8 appear to govern this case.  Section 340.4 applies to actions for birth and pre-birth injuries; section 340.8 applies to actions based on exposure to hazardous materials and toxic substances.  Unlike the medical malpractice statute in *Young*, however, section 340.8 is not part of an "interrelated legislative scheme enacted to deal with"

31

claims involving exposure to hazardous material and toxic substances. (*Young*, *supra*, 41 Cal.3d at p. 894.) But, subdivision (d) of section 340.8 evinces a legislative intent to treat victims of toxic substance exposures "differently from other personal injury victims." (*Young*, at p. 894.) Based on our plain language analysis of section 340.8 and the breadth of the language used in that section, we conclude that like section 340.5 in *Young*, "it is the later, more specific statute which must be found controlling over an earlier statute, even though the earlier statute would by its terms cover the present situation." (*Young*, at p. 894.)

Both parties have asked us to take judicial notice of legislative history materials regarding section 340.8. WDC argues that neither the language of section 340.8 nor its legislative history mention section 340.4 or claims arising from pre-birth or birth injuries and that "[n]othing in the statute or its legislative history states that the Legislature intended [s]ection 340.8 to have any effect whatsoever on the applicability of section 340.4." Plaintiff responds that since section 340.8 is unambiguous, we need not resort to its legislative history to interpret it. She also asserts that even if we consider the legislative history, it does not support WDC's interpretation of section 340.8. Finally, Plaintiff contends that WDC "has not submitted the complete legislative history of section 340.8" and asks us—in the event we grant WDC's request for judicial notice—to take judicial notice of additional legislative history materials attached to her request of judicial notice.

Since our analysis is based on the plain text of section 340.8, we need not resort to legislative history materials as an aid to construction. But even if we consider the legislative history as the parties suggest, it does not contain anything that persuades us that our analysis of section 340.8 is incorrect.[11] Like the uncodified portion of the

---

[11] The legislative history materials the parties provided include the original text of Senate Bill 331, amended versions of the bill, the Senate Judiciary Committee Analysis for a May 2003 hearing on the bill, and the Assembly Judiciary Committee Analysis for a

legislation quoted above, (Stats. 2003, ch. 873, § 2), the legislative history indicates that the Legislature wanted to expressly provide that the discovery rule applies in cases alleging injury due to exposure to toxic substances and to disapprove of specified case law on the issue of inquiry notice and media reports. The legislative history does not mention section 340.4 (pre-birth injuries), section 352, or the age of the plaintiff. Nothing in the legislative history states that by enacting section 340.8 (toxic exposures) the Legislature intended to create an exception to section 340.4 (pre-birth injuries). But, more importantly, the legislative history does not indicate that in enacting a new statute of limitations for civil actions for injury or illness based on exposures to toxic substances, the Legislature intended that a different limitations period apply if the exposure occurred before or during the plaintiff's birth. In other words, there is no indication that the Legislature intended, and it makes no sense, for there to be a different discovery rule (e.g., regarding inquiry notice and media reports) depending on whether the toxic exposure occurred before of after birth. Nothing in the legislative history suggests that the Legislature intended that section 340.4 (prebirth injuries), rather than section 340.8 (toxic exposures), should apply to prenatal toxic exposure cases, or that section 352 should not apply to such cases.

We hold that assuming delayed accrual until December 31, 1998, such that Hanh's claims "were alive" on January 1, 2004, when section 340.8 took effect, Hanh's claims were then governed by section 340.8, and are not time-barred. We turn next to the

---

July 2003 hearing on the bill. Both parties' requests for judicial notice are hereby granted. (Evid. Code, §§ 452, subd. (c); 459.)

Upon examining the legislative history materials the parties submitted, we noted that they did not include all of the legislative history available on the Official California Legislative Information website. (See http://www.leginfo.ca.gov/bilinfo.html [as of Sept. 12, 2014].) On our own motion, to obtain a complete legislative history, we have taken judicial notice of the materials that are on that website that were not included in the parties' submissions.

question whether Hanh has pleaded sufficient facts under the discovery rule to demonstrate delayed accrual until December 31, 1998.

### IV. The Allegations of the Third Amended Complaint Support a Finding of Delayed Accrual Under the Discovery Rule Until December 31, 1998

"The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her [or his] injury and its negligent cause. [Citation.] A plaintiff is held to her [or his] actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her [or him]." (*Jolly*, *supra*, 44 Cal.3d at p. 1109, footnote omitted.) "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her [or his] injury was caused by wrongdoing, that someone has done something wrong to her [or him]." (*Id.* at p. 1110.) In other words, "the limitations period begins once the plaintiff 'has notice or information of circumstances to put a reasonable person *on inquiry*.' " (*Id.* at pp. 1110-1111, original italics, internal quotations omitted.) "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she [or he] must decide whether to file suit or sit on her [or his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she [or he] cannot wait for the facts to find her [or him]." (*Id.* at p. 1111 [action filed in 1981 barred by one-year statute of limitations because plaintiff suspected in 1978 that she had been injured by a defective drug and wanted to file a claim at that time].)

*Jolly* "sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing. [Citation.] The first to occur

under these two tests begins the limitations period." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391, citing *Jolly*, *supra*, 44 Cal.3d at p. 1110.)

" 'Resolution of the statute of limitations issue is normally a question of fact.' (*Fox*, *supra*, 35 Cal.4th at p. 810.) More specifically, as to accrual, 'once properly pleaded, belated discovery is a question of fact.' [Citation.] As our state's high court has observed: 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact.' [Citation.] 'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.' [Citation.] Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer, 'the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence.' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1320 (*E-Fab*).)

"[B]y discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, [the Supreme Court] was referring to the 'generic' elements of wrongdoing, causation, and harm." (*Fox*, *supra*, 35 Cal.4th at p. 807, citing *Norgart*, *supra*, 21 Cal.4th at p. 397.) "In so using the term 'elements,' [the Supreme Court did] not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [courts] look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox*, at p. 807.) "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] on inquiry' " ' or if they have ' " 'the opportunity to obtain knowledge from sources open to [their] investigation.' " ' [Citations.] In other words,

plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id.* at p. 807-808.) In this context, "injury" means both a person's physical condition and its negligent cause. (*Id.* at p. 808, fn. 2.) "Thus, physical injury alone is often insufficient to trigger the statute of limitations." (*Ibid.*)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' " (*Fox*, *supra*, 35 Cal.4th at p. 808.) "Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Id.* at pp. 808-809.)

" 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]' [Citation.]" (*Geneva Towers Ltd. Partnership v. City and County of San Francisco*

36

(2003) 29 Cal.4th 769, 781.)  Thus, a demurrer based on the statute of limitations lies only where the dates in question are shown on the face of the complaint.  (See *Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 25.)

We agree with the trial court's finding that Lan "would have at least had a suspicion that there could have been a causal connection between her occupational chemical exposures and Plaintiff's injuries no later than 1998."  The only relevant dates alleged in the third amended complaint are that Lan worked for WDC "[f]rom approximately 1987 until 1998" and that Hanh was born on August 11, 1994.  Since the third amended complaint does not allege the exact date that Lan stopped working for WDC—only the year—for the purpose of our analysis we shall assume that Lan worked there until December 31, 1998, the last day of 1998.  Hanh does not allege when she was diagnosed with agenesis of the corpus callosum, when Parents spoke with her doctors about possible causes of her injuries, when the diagnostic tests listed in her pleading were done, or when Hanh's doctors told Parents they were unaware of the cause of Hanh's injuries.

Hanh alleges, on information and belief, that WDC offered health services, including reproductive health services, to its employees and that the "health service providers included nurses and physicians affiliated with and/or employed by" WDC (hereafter WDC Health Care Providers).  These services included "a detailed review of Lan's medical and reproductive history and industrial hygiene assessment and monitoring."  Hanh does not allege when this occurred.  At some undisclosed time, WDC Health Care Providers "falsely represented to Lan . . . that there was no causal connection between her occupational chemical exposure and Hanh's . . . injuries."  Reasonable inferences from these facts are that while Lan was still employed by WDC (which was no later than December 31, 1998), Lan asked WDC Health Care Providers about a possible causal connection between Hanh's injuries and Lan's work exposure.  These allegations support the conclusion that Parents were aware of Hanh's injuries and suspected both

37

*wrongdoing* and the alleged *cause* of her injuries when Lan went to WDC Health Care Providers and asked whether Hanh's birth defects were related to chemical exposures at work. Thus, this case involves something more than injury alone; Lan actually suspected her exposure to hazardous chemicals—a type of wrongdoing—had caused Hanh's injuries.

WDC does not dispute that the third amended complaint supports a claim of delayed accrual until December 31, 1998. WDC asserts that "the conversation between Lan . . . and a [WDC] health care provider took place while Lan . . . was employed at [WDC], at some time between August 11, 1994 ([Hanh's] date of birth) and 1998, when Lan . . . left her employment at [WDC]" and that Lan "suspected that her exposure to chemicals may have caused [Hanh's] alleged injuries at the latest in 1998."

Since the allegations of the third amended complaint support a claim of delayed accrual until December 31, 1998, Hanh's claims were not barred by the six-year limitations period in section 340.4 (pre-birth injuries) on January 1, 2004 when section 340.8 (toxic exposures) went into effect. Since her claims had not yet expired, she was entitled to rely on the statute of limitations in section 340.8, which included tolling for minority. Thus, Hanh's action filed on October 25, 2010, when she was 16 years old, was timely. In light of our conclusions, we will not reach Hanh's contentions that she has pleaded sufficient facts to support delayed accrual until December 2008 under the discovery rule or that WDC is estopped from relying on a statute of limitations defense.

### DISPOSITION

The judgment of dismissal is reversed. The case is remanded to the superior court with directions to vacate its order sustaining WDC's demurrers without leave to amend and to enter a new order overruling the demurrers to Hanh's third amended complaint. Hanh is awarded her costs on appeal.

38

_____
Márquez, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
Grover, J.




Nguyen v. Western Digital Corporation
No. H038934

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.: 1-10-CV-185748

Trial Judge:                                    The Honorable
                                                Patricia M. Lucas


Attorneys for Plaintiff and Appellant           WATERS KRAUS & PAUL
HANH NGUYEN, a Minor, etc.:                     Michael B. Gurien



Attorneys for Defendant and Respondent          ARNOLD & PORTER
WESTERN DIGITAL CORPORATION:                    Maurice A. Leiter



Nguyen v. Western Digital Corporation
H038934