Filed 5/13/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| DOMINIQUE LOPEZ, a Minor, etc., | B256792 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC476544) |
| v. | |
| SONY ELECTRONICS, INC., | |
| Defendant and Respondent. | |


APPEAL from the judgment of the Superior Court of Los Angeles County. Frederick C. Shaller, Judge. Affirmed.


Waters, Kraus & Paul and Michael B. Gurien for Plaintiff and Appellant.

Musick, Peeler & Garrett and William A. Bossen for Defendant and Respondent.


\* \* \* \* \* \* \* \* \* \*

We are asked to resolve whether an action alleging personal injuries caused by prenatal exposure to toxic substances is governed by the statute of limitations set forth in Code of Civil Procedure section 340.4[1] (applicable to tort actions for birth and prebirth injuries), or the statute of limitations set forth in section 340.8 (applicable to tort actions for exposure to hazardous materials and toxic substances).

Plaintiff and appellant Dominique Lopez, at age 12, by and through her mother and guardian ad litem Cheryl Lopez, brought an action against defendant and respondent Sony Electronics, Inc. (Sony) alleging that her prenatal exposure to toxic substances caused her to suffer birth defects and permanent injuries. Sony successfully argued in the trial court that plaintiff's action was time-barred under section 340.4, which expressly provides that actions for prenatal injuries are not tolled during the plaintiff's minority. Plaintiff appeals from the entry of summary judgment in favor of Sony, contending the correct statute of limitations applicable to her claims is section 340.8, under which her action would be timely.

We conclude section 340.4 governs plaintiff's claims and that her action is time-barred. In so holding, we depart from our colleagues in the Sixth District who concluded that section 340.8 supplants the limitations period of section 340.4 for claims based on prenatal injuries caused by exposure to hazardous materials or toxic substances. (See *Nguyen v. Western Digital Corporation* (2014) 229 Cal.App.4th 1522 (*Nguyen*).)

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts related to the time-bar are not in dispute. Plaintiff was born in April 1999, with numerous birth defects, including fusion of her cervical vertebrae, facial asymmetry, dysplastic nails, diverticulum of the bladder, and a misshapen kidney. She also suffers from developmental delays. Plaintiff's mother worked at a Sony facility in San Diego from 1978 through 2000, including during her pregnancy with plaintiff.

On January 6, 2012, plaintiff filed this action against Sony for negligence, strict liability, willful misconduct, and intentional misrepresentation. Plaintiff alleged that,

---

[1]    All undesignated section references are to the Code of Civil Procedure.

2

during her mother's employment with Sony, she was exposed for prolonged periods of time to chemicals which caused plaintiff's birth defects.

Sony moved for summary judgment on the ground plaintiff's action was barred by section 340.4 which imposes a six-year statute of limitations for birth and prebirth injuries, and which also expressly provides there is no tolling of the limitations period under section 352[2] during the plaintiff's minority. Sony acknowledged in its motion that the common law delayed discovery rule applies to actions governed by section 340.4, but produced evidence showing plaintiff's mother reasonably suspected a connection between her workplace exposures at Sony and her daughter's injuries on or before August 2000 (including records related to a worker's compensation claim plaintiff's mother filed concerning the same workplace exposures).

Plaintiff opposed Sony's motion, arguing her action was subject to section 340.8, not section 340.4. While section 340.8 incorporates the shorter two-year limitations period of the general personal injury statute (§ 335.1), the limitations period may be tolled under section 352 during a plaintiff's minority. Thus, plaintiff argued her action was timely because it was filed when she was still a minor. Plaintiff did not offer any evidence to dispute that her mother knew, since at least 2000, of the connection between her workplace exposures at Sony and plaintiff's birth defects. Instead, plaintiff objected to the admissibility of the evidence presented by Sony on that issue (e.g., records from the worker's compensation proceeding), and otherwise argued it was irrelevant because tolling under section 352 applied to an action under section 340.8, so she need not rely on the separate tolling afforded by the delayed discovery rule.

---

[2]     Section 352, subdivision (a) provides:  "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or lacking the legal capacity to make decisions, the time of the disability is not part of the time limited for the commencement of the action."

The trial court granted Sony's motion, reasoning that section 340.4 applied and barred plaintiff's action as a matter of law. Judgment in favor of Sony was entered thereafter on April 8, 2014. (*Nguyen* was not decided until Sept. 2014.)

This appeal followed.

## DISCUSSION

The sole issue before us is one of statutory interpretation based on undisputed facts. We therefore exercise independent review. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387 (*Imperial Merchant Services*).)

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the Legislature." (*Young v. Haines* (1986) 41 Cal.3d 883, 894 (*Young*); accord, *Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 95 ["the intent of the Legislature is the end and aim of all statutory construction"].) Courts look first to the statutory language in attempting to glean legislative intent, giving the words their " 'usual and ordinary meaning.' [Citation.]" (*Imperial Merchant Services*, *supra*, 47 Cal.4th at p. 387.) If the statutory language is clear and unambiguous, the plain meaning of the statute governs. (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880.)

Section 340.4 provides: "An action by or on behalf of a minor for personal injuries sustained before or in the course of his or her birth must be commenced within six years after the date of birth, and the time the minor is under any disability mentioned in Section 352 shall not be excluded in computing the time limited for the commencement of the action."

Section 340.8, in relevant part, provides: "In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later."

4

If read separately and in isolation, both section 340.4 and section 340.8 are unambiguous on their face under the plain meaning rule. Both may be read to govern plaintiff's action for injuries sustained before her birth and for exposure to toxic substances. However, we do *not* construe statutory provisions in isolation. "Where, as here, we are called upon to interpret two seemingly inconsistent statutes to determine which applies under a particular set of facts, our goal is to harmonize the law [citation] and avoid an interpretation that requires one statute to be ignored." (*Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873, 876.) " ' "[Every] statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]" ' [Citation.]" (*In re Michael G.* (1988) 44 Cal.3d 283, 296 (*Michael G.*); accord, *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7.)

Here, the statutory language alone does not answer the question which statute of limitations was intended by the Legislature to apply to claims for prenatal injuries caused by exposure to toxic substances. " 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Imperial Merchant Services*, *supra*, 47 Cal.4th at p. 388; see also *Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 579 [the " 'literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole' "], and *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 ["courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective"].) We therefore turn to a review of the legislative history of both statutes.

First, we discuss the statute of limitations applicable to prenatal injuries. Code of Civil Procedure section 340.4 was enacted in 1992 (Stats. 1992, ch. 163, § 16), but has its provenance in statutes enacted in 1872 and amended in 1941. The California Legislature first created a statutory cause of action for prenatal injuries in 1872. Former Civil Code

section 29 abrogated "the common law rule that an unborn child has no independent existence and, therefore, no right of action for injuries suffered before its birth." (*Young*, *supra*, 41 Cal.3d at p. 892.) "As originally enacted, [former Civil Code section 29] applied to all actions which might be brought after birth and thus did not provide any single statute of limitations for these actions. The applicable statutes of limitations were set forth in other statutes, depending on the nature of the cause of action. Furthermore, [Code of Civil Procedure] section 352, also enacted in 1872, established a general rule that the statute of limitations for most actions was tolled during the plaintiff's minority." (*Ibid.*, fn. omitted.)

In *Scott v. McPheeters* (1939) 33 Cal.App.2d 629, 631, the court suggested in dictum that an action for prenatal injuries would be tolled during the child's minority. To clarify that was not the legislative intent, at the next regular session, the Legislature amended former Civil Code section 29 to include a six-year limitations period, running from the date of birth, for actions alleging prenatal injuries. (Stats. 1941, ch. 337, § 1; see also *Olivas v. Weiner* (1954) 127 Cal.App.2d 597, 599.) The Legislature also amended former Civil Code section 29 "to state expressly that [Code of Civil Procedure] section 352 tolling *did not apply* to actions brought under that statute." (*Young*, *supra*, 41 Cal.3d at p. 892, italics added.)

Then, in 1992, the Legislature moved the limitations period of former Civil Code section 29 to the Code of Civil Procedure and reenacted it, without substantive change, as Code of Civil Procedure section 340.4. (Stats. 1992, ch. 163, § 16.) The part of former Civil Code section 29 that granted a right to sue for prenatal injuries was reenacted, without substantive change, as Civil Code section 43.1. (Stats. 1992, ch. 163, § 4.) Thus, since 1941, the statute of limitations for prenatal injuries has been six years, running from the date of birth, with no tolling during minority.

Now, we turn to the statute of limitations applicable to exposure to toxic substances. Section 340.8 was first enacted in 2004, introduced in the regular legislative session for 2003 and 2004 as Senate Bill No. 331 (SB 331). We granted Sony's request to take judicial notice of the published legislative records for SB 331, including records

6

and reports from both the Senate and Assembly Committees on the Judiciary. The legislative records reveal a narrow and specific purpose for the enactment of section 340.8, having nothing to do with prenatal injuries.

SB 331 was described as an act to "codify the doctrine of 'delayed discovery' as it applies to the statute of limitations for filing a lawsuit for illness, injury or death caused by exposure to hazardous waste." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Apr. 29, 2003, p. 1.) The Senate Committee on the Judiciary report explains that the only "existing law" to be affected by the enactment of the proposed new statute is the general personal injury limitations period codified at section 335.1. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Apr. 29, 2003, p. 2.)

The Senate Committee on the Judiciary explained the genesis of SB 331 and the "[s]tated need" for the new statute as follows: "Last year, the Legislature extended the statute of limitations from one year to two years [(section 335.1)] for suits alleging personal injury or death due to the wrongful act of another. (SB 688 (Burton), Ch. 488, Stats. of 2002.) Supporters of that bill argued that the one-year statute was one of the shortest limitation periods in the nation for such cases, and that its brevity encouraged needless litigation by forcing plaintiffs to rush to court to protect their rights, whereas a longer time period would favor settlement of claims prior to litigation. [¶] With this bill, [the sponsor] seeks to build on SB 688's extended limitations period by codifying the 'delayed discovery' doctrine as it applies to suits for personal injury caused by hazardous substances." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Apr. 29, 2003, p. 3.)

The reports and records from the Assembly Committee on the Judiciary reflect the same narrow focus. (See, e.g., Assem. Com. on Judiciary, Rep. on Sen. Bill 331 (2003-2004 Reg. Sess.) as amended June 26, 2003, pp. 1-9.)

The uncodified portion of the final chaptered bill that added section 340.8 contains an express statement of legislative intent: "It is the intent of the Legislature to codify the rulings in *Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, *Norgart v. Upjohn Co*. (1999)

7

21 Cal.4th 383, and *Clark v. Baxter HealthCare Corp.* (2000) 83 Cal.App.4th 1048, in subdivisions (a) and (b) of Section 340.8 of the Code of Civil Procedure, as set forth in this measure, and to disapprove the ruling in *McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, to the extent the ruling in *McKelvey* is inconsistent with paragraph (2) of subdivision (c) of Section 340.8 of the Code of Civil Procedure, as set forth in this measure." (Stats. 2003, ch. 873, § 2.) Section 340.8, subdivision (c)(2) provides: "Media reports regarding the hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another."

It was the holding in *McKelvey v. Boeing North American, Inc.*, that the Legislature intended to override by enactment of section 340.8, in addition to codifying the applicability of the delayed discovery rule for toxic exposure cases generally. *Jolly v. Eli Lilly & Co.*, *Norgart v. Upjohn Co.*, and *Clark v. Baxter HealthCare Corp.* all concerned application of the common law delayed discovery rule with respect to the accrual of personal injury or wrongful death claims under former section 340, subdivision (3) (the former one-year limitations period for general personal injury claims). *McKelvey v. Boeing North American, Inc.* held media reports put plaintiffs on inquiry notice of the link between exposures and resulting injury, which the Legislature expressly disapproved by enacting section 340.8.

Plaintiff, relying primarily on *Nguyen*, argues that section 340.8 is the later-enacted, and more specific statute, which applies to "any" action for injuries based on exposure to toxic substances, and the statute was therefore intended to supplant section 340.4 in actions alleging prenatal injuries caused by exposure to toxic substances. We are not persuaded the Legislature intended to make such a big change in such an obscure way.

As the Supreme Court has explained, "[w]e do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied." (*People v. Superior Court*

8

*(Zamudio)* (2000) 23 Cal.4th 183, 199.) It is well settled that "[t]he law shuns repeals by implication. [Citation.] In fact, ' "[t]he presumption against implied repeal is so strong that, 'To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' " ' [Citations.]" (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569; see also *Anson v. County of Merced* (1988) 202 Cal.App.3d 1195, 1202 [where "Legislature did not address the potential conflict" between Gov. Code, § 945.6 and Code Civ. Proc., § 340.5, reasonable inference is that the Legislature intended the earlier statute to "remain in full force and effect"].)

When section 340.8 was enacted in 2004, the six-year limitations period for prenatal injuries had been in existence for *six decades*, along with the corresponding provision that tolling under section 352 did *not* apply to extend the limitations period for actions alleging birth or prebirth injuries. The timeworn principles of statutory interpretation recited above simply do not support the conclusion that the Legislature intended to overthrow that longstanding law, without expressly saying so, and having expressed an entirely different purpose for enacting section 340.8. (See *Whitman v. American Trucking* (2001) 531 U.S. 457, 468 [rejecting claim that Clean Air Act (42 U.S.C. § 7401 et seq.) grants authority to the Environmental Protection Agency to consider costs in setting national air quality standards in the absence of clear statutory language that was the congressional intent; "Congress . . . does not . . . hide elephants in mouseholes."].)

Plaintiff's contrived interpretation not only fails to give effect to the legislative intent behind both statutes as reflected in the legislative history, but it also fails to respect our mandate to harmonize conflicting statutes " ' "with reference to the whole system of law" ' " of which they are a part. (*Michael G.*, *supra*, 44 Cal.3d at p. 296.)

In 1941, the Legislature struck a balance as to the appropriate limitations period for prenatal injury claims, settling on the relatively long six-year limitations period for injured minors to assert their claims, but protecting defendants against the assertion of

9

stale claims by expressly prohibiting tolling during the period of minority which could result in a limitations period in excess of 20 years. In 1954, the common law delayed discovery rule was held to apply to actions for prenatal injuries, ameliorating any harsh effects of the prohibition on section 352 tolling. (*Myers v. Stevenson* (1954) 125 Cal.App.2d 399, 407; see also *Young*, *supra*, 41 Cal.3d at pp. 892-893.)

In 2004, the Legislature enacted section 340.8 on the heels of its enactment, a year earlier, of a new two-year limitations period for general personal injury claims (§ 335.1). The Legislature plainly expressed that its purpose in enacting section 340.8 was to incorporate the two-year limitations period of section 335.1 for toxic exposure cases, to codify the delayed discovery rule for those cases, and to disapprove of the holding in *McKelvey v. Boeing North American, Inc.*

We are not persuaded by plaintiff's argument that we should read subdivision (d) of section 340.8 to mean the opposite of what it says. Subdivision (d) of section 340.8 provides: "Nothing in this section shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions not based upon exposure to a hazardous material or toxic substance." Plaintiff argues the "clear import" of this language is that the Legislature intended to change the law in effect with respect to all claims based on exposure to toxic substances, including prenatal exposures. We read subdivision (d) to mean only that section 340.8 does not change any law except that it codifies the delayed discovery rule in personal injury cases based on toxic exposures that were previously governed by the two-year limitations period of section 335.1. Subdivision (d) states a limited purpose, not an expansive sweep.

Nor do we find any merit in plaintiff's reliance on *Young*, *supra*, 41 Cal.3d 883, as support for the notion that subdivision (d) of section 340.8 expresses a legislative intent to cover all personal injury claims arising from toxic exposures, including prenatal exposures. In *Young*, the Supreme Court was asked to determine whether section 340.4, or section 340.5 regarding medical negligence claims, governed an action alleging prenatal injuries arising from medical negligence. The court concluded that section 340.5 specified the applicable limitations period, reasoning that "section 340.5 is a later-enacted

10

statute intended to cover all personal injury claims arising from medical malpractice. That statute was adopted as a response to a perceived 'major health care crises in the State of California attributable to skyrocketing malpractice premium costs and resulting in a potential breakdown of the health delivery system. . . .' [Citation.]" (*Young*, at p. 894.)

Central to the court's analysis was the fact that section 340.5 was part of a comprehensive and "interrelated legislative scheme enacted to deal specifically with all medical malpractice claims" and "to treat all malpractice victims differently from other personal injury victims." (*Young*, *supra*, 41 Cal.3d at p. 894.)  Moreover, the statute contains express language pertaining to claims by minor plaintiffs.  (§ 340.5 ["Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period.  Such time limitation shall be tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor for professional negligence."].)

Unlike the medical malpractice statute of limitations construed in *Young*, section 340.8 was *not* enacted as part of a comprehensive legislative scheme.  The statute contains no express language concerning minor plaintiffs.  And, we repeat, the legislative history plainly demonstrates that the statute was only intended to codify the delayed discovery rule as to toxic exposure cases previously governed by the general personal injury statute (§ 335.1), and to reject the holding of *McKelvey v. Boeing North American, Inc*.  It had a narrow focus and was not at all concerned with prenatal claims as to which section 335.1 did not apply.

Plaintiff further argues that in crafting section 340.8, the Legislature specifically used the broad and inclusive phrase "any civil action . . . based upon exposure to a . . . toxic substance" in describing the scope of the statute, and carved out only two exemptions from that coverage in subdivision (c)(1).  Subdivision (c)(1) provides: "A 'civil action for injury or illness based upon exposure to a hazardous material or toxic

11

substance' does not include an action subject to Section 340.2 or 340.5." Section 340.2 governs claims related to asbestos exposure, and section 340.5 governs claims related to medical negligence. Plaintiff contends the omission of actions governed by section 340.4 in the list of exemptions defining the phrase "any civil action" demonstrates that the Legislature intended to overthrow the limitations period of section 340.4 for actions for prenatal injuries caused by exposure to toxic substances. Plaintiff cites the rule of construction *expressio unius est exclusio alterius*, which provides that "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Michael G.*, *supra*, 44 Cal.3d at p. 291.)

However, the rule " 'is inapplicable where its operation would contradict a discernible and contrary legislative intent. [Citation.]' [Citations.]" (*Michael G.*, *supra,* 44 Cal.3d at p. 291.) In *Michael G.*, the court rejected the argument that the juvenile court's broad authority to hold wards in contempt, pursuant to Welfare and Institutions Code section 213, had been impliedly proscribed by the Legislature's enactment of two more specific statutes (Welf. & Inst. Code, §§ 207, 601, subd. (b)), one of which enumerated the circumstances for the "secure detention" of wards, *omitting* incarceration under section 213 as a sanction for contempt of court. (*Michael G.,* at pp. 289-294.) *Michael G.* nevertheless refused to apply the rule of *expressio unius est exclusio alterius*, concluding it would be improper to infer a legislative intent to proscribe the juvenile court's fundamental contempt power under section 213, a statute which had been around "in some form for decades." (*Michael G.*, at pp. 293-294.)

Similarly, application of the rule of construction here would be contrary to the plain legislative intent behind both statutes. Moreover, application of the rule would lead to absurd results. If plaintiff's interpretation were correct, then (1) actions for prenatal injuries caused by exposure to asbestos would have a one-year limitations period under section 340.2, tolled only by delayed discovery; (2) actions for prenatal injuries caused by exposure to all other toxic substances would have a 20-year limitations period under section 340.8, tolled during minority by section 352; and (3) all other actions for prenatal injuries (i.e., injuries not caused by exposure to asbestos or any other toxic substance)

12

would be governed by the six-year limitations period of section 340.4, tolled only by delayed discovery.  Nothing in the language or legislative history of section 340.8 suggests the Legislature perceived a need to distinguish among actions for prenatal injuries depending on whether they were caused by exposure to asbestos, or to a toxic substance other than asbestos, or not caused by any toxic exposure.  We decline to interpret section 340.8 in a way that would lead to such an absurd result.

## DISPOSITION

The judgment entered in favor of defendant and respondent Sony Electronics, Inc. is affirmed.  Defendant and respondent to recover costs on appeal.


GRIMES, J.


I CONCUR:


BIGELOW, P. J.

**DOMINIQUE LOPEZ etc. v. SONY ELECTRONICS, INC. - B256792**

RUBIN J. – Dissenting.


  I respectfully dissent.  I generally adopt the principled opinion written by Justice Marquez of the Sixth District in *Nguyen v. Western Digital Corp.* (2014) 229 Cal.App.4th 1522.

  For the most part, my dissent accepts all the facts and legal authorities offered by the majority.  There is no material dispute between the majority and dissent on the events underlying our review of the order granting summary judgment:  The mother of plaintiff Dominique Lopez had worked in a manufacturing facility operated by defendant Sony Electronics, Inc. while pregnant with Dominique.  Her mother was exposed to several teratogenic chemicals that caused Dominque's birth defects.  Teratogenic chemicals are chemicals that cause birth defects.  (*People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1556.)[1]

  Nor is there any material disagreement between the majority and dissent on the relevant authorities that must be considered in reviewing the summary judgment in this case.  The statutes of limitations in question, Code of Civil Procedure sections 340.4 and 340.8, are at the heart of this appeal.[2]  The canons of statutory construction are well known, the legislative history is not in dispute, the few cases that in any way address the issue presented here are cited, and the standard of review is settled.  I acknowledge that on its face each statute superficially appears to cover this litigation.  My disagreement with the majority is in the final conclusion that it reaches:  Even though section 340.8 deals specifically with toxic torts and was enacted after section 340.4, section 340.8 does

---

[1] This is not to say that the underlying facts will never be disputed, only that because summary judgment was granted solely on statute of limitations grounds, for the present appeal there is no dispute about the factual claims underlying plaintiff's lawsuit.

[2] All undesignated statutory references are to the Code of Civil Procedure.

not mean what it says and is trumped by the shorter statute of limitations of section 340.4 for prenatal and birth injuries. This is so even though, as the majority observes, section 340.4 has its genesis in the 19th century when claims for toxic torts were generally unknown. I find instead that section 340.8 is the applicable statute of limitations, and conclude that summary judgment should have been denied.

A. *Brief Review of the Applicable Statutes*

*1.     Section 340.4.* Section 340.4 deals with prenatal and birth injuries, was enacted in 1992, took effect on January 1, 1994, and continues in substance former Civil Code section 29. (Stats. 1992, ch. 163, §§ 16, 161, pp. 731, 842; 22 Cal. L. Rev. Com. Reports 1 (1992).) Section 340.4 provides:

"An action by or on behalf of a minor for personal injuries sustained before or in the course of his or her birth must be commenced within six years after the date of birth, and the time the minor is under any disability mentioned in Section 352 shall not be excluded in computing the time limited for the commencement of the action."

Section 340.4 has a lengthy legislative bloodline. As enacted in 1872, former Civil Code section 29 provided: "A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth." No express private right of action was created by Civil Code section 29 and, obviously, no statute of limitations was provided. At the time, section 352 – also enacted in 1872 – provided tolling for most actions while an injured party was a minor. (§ 352.)

In *Scott v. McPheeters* (1939) 33 Cal.App.2d 629, 631, the appellate court held that Civil Code section 29 created a cause of action for prenatal injuries. It also suggested in dictum that under section 352 the statute of limitations for prenatal injuries was tolled during the child's minority.[3] Responding to this dictum, the Legislature in

---

[3]     In denying a petition for rehearing, the Supreme Court stated that the Court of Appeal's discussion of section 352 was not "necessary to the decision and it does not

2

1941 amended former Civil Code section 29 to include a six-year statute of limitations starting from the date of birth.  The amendment also expressly provided that minority tolling under section 352 did not apply to prenatal actions.  (See *Young v. Haines* (1986) 41 Cal.3d 883, 892 (*Young*).)  The amended statute became section 340.4 in 1992 and essentially has carried forward the language from the 1941 enactment.

Although tolling during the period of minority under section 352 is expressly made inapplicable to section 340.4 actions, claims for prenatal injuries are subject to the delayed discovery rule, based on the actual or constructive knowledge of the child's parents.  (*Young, supra,* 41 Cal.3d at p. 890, fn. 4.)  By case law, malpractice actions against health care providers based on prenatal injuries (no such claims are present here) are carved out of section 340.4 and are covered by the medical malpractice statute of limitations, section 340.5.  (*Young,* at pp. 891-892, 894.)

2.      *Section 340.8.*  Section 340.8 deals with toxic torts, was enacted in 2003, and took effect on January 1, 2004.  (Stats. 2003, ch. 873, p. 6398; Cal. Const., art. IV, § 8, subd. (c).)  It provides:

"(a)  In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later.

[¶] . . . [¶]

"(c)  For purposes of this section:

" (1)  A 'civil action for injury or illness based upon exposure to a hazardous material or toxic substance' does not include an action subject to Section 340.2 [the

---

affect the soundness of the conclusion reached by the District Court of Appeal." (*Scott v. McPheeters, supra,* 33 Cal.App.2d at p. 640.)

3

statute of limitations for asbestos exposure actions] or 340.5 [the medical malpractice statute of limitations].

"(2)  Media reports regarding the hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another.

"(d)  Nothing in this section shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions not based upon exposure to a hazardous material or toxic substance."

**3.      *Minority Tolling under Section 340.8.***   Under section 352, actions subject to the statutes of limitation set forth in Chapter 3, Title 2, Part 2 of the Code of Civil Procedure are tolled while the plaintiff is a minor.  (§ 352; *Nguyen, supra,* 229 Cal.App.4th at p. 1540.)  Because section 340.8 is found within that portion of the Code of Civil Procedure, section 340.8 actions are also subject to minority tolling.  (*Nguyen* at pp. 1540-1541.)

B.      *The* Nguyen *Decision*

Central to this appeal is the reconciliation of sections 340.4 and 340.8 in cases presenting prenatal or birth injuries caused by toxic torts.  Reconciliation may not be the best word because, on their face, the two statutes appear almost irreconcilable.  A reasonable argument can be made that because section 340.4 covers prenatal injuries, the statute includes prenatal injuries from tortious exposure to toxic substances.  Equally reasonable from facial inquiry is that because section 340.8 covers toxic torts, it also includes toxic torts causing prenatal injuries.  Given that both statutes have superficial appeal, the judicial task is to determine whether there is anything in the language of the statutes that informs us which statute the Legislature intended to be paramount.  That is essentially how *Nguyen* analyzed the issue.  (*Nguyen, supra,* 229 Cal.App.4th at p. 1547.)  *Nguyen,* which was decided after summary judgment was entered in this case, held that

4

section 340.8, and not section 340.4, provides the limitations period applicable to actions for injuries caused by prenatal exposure to toxic substances.[4]

The majority cites *Nyugen* but devotes little discussion of its analysis. Because I find the Sixth District's opinion compelling, I address the decision in more detail.

The *Nguyen* court based its analysis on the plain language of section 340.8. (*Nguyen, supra,* 229 Cal.App.4th at pp. 1545-1548.) The court acknowledged that nothing in the statute or the legislative history mentioned section 340.4 by name or evidenced an intent to exclude toxic tort cases from its reach. (*Id.* at pp. 1547-1548, 1550-1551.) At the time section 340.8 became law, personal injury claims were subject to different limitations periods based in part on the plaintiff's age at the time of injury. (*Id.* at p. 1546.) These included personal injuries generally for adults and minors (§ 335.1), tolling for minors (§ 352), and birth and prenatal injuries (§ 340.4). In the face of these disparate provisions, *Nyugen* found that the Legislature's use of the all-inclusive term "any" when defining the reach of section 340.8 for civil actions for exposure to various toxic or hazardous substances showed an intent to enact a statute with broad application to any and all actions for injuries based on exposure to toxic substances regardless of the age of the victim. (*Nguyen*, at p. 1546.)

The *Nguyen* court found further support for its conclusion in the Legislature's choice to exempt from section 340.8 two types of claims – those for asbestos exposure and those for professional negligence by health care providers. Those causes of action were subject to specific statutes of limitations – sections 340.2 and 340.5 which, respectively, deal exclusively with those two claims. The Legislature's failure to include section 340.4 actions as an exception when it enacted section 340.8 supported the conclusion that, except for those claims expressly excluded, the Legislature intended

---

[4]    The facts of *Nguyen* are substantially similar to ours, but have no particular relevance to our analysis. In brief, the plaintiff sued in 2010 when she was 16, alleging that in 1994 her then-pregnant mother was exposed to various teratogenic chemicals while working for the defendant.

section 340.8 to apply broadly to all other claims based on exposure to toxic substances, including those based on prenatal injuries. (*Nguyen, supra,* 229 Cal.App.4th at p. 1548.)

The *Nguyen* court also drew an analogy to our Supreme Court's decision in *Young, supra,* 41 Cal.3d 886, which considered whether a minor's action for medical malpractice that occurred before or at the time of birth was subject to section 340.4 and therefore timely under the discovery rule, or was untimely under section 340.5, which, with certain exceptions, requires minors under the age of six to sue by their eighth birthday. Although both provisions on their face appeared to govern (*id.* at p. 894), the *Young* court was swayed by the fact that section 340.5 was the newer provision and was part of a comprehensive legislative scheme designed to address the medical malpractice insurance crisis. As a result, the later, more specific statute controlled. (*Nguyen, supra,* 229 Cal.App.4th at p. 1549, citing *Young,* at pp. 891-892, 894.)

Similar to *Young,* the *Nguyen* court noted that sections 340.8 and 340.4 each superficially appeared to govern the claims that Dominique now makes. Although section 340.8 may not have been part of a comprehensive statutory scheme to deal with claims for exposure to toxic substances, the *Nguyen* court found an analogous purpose in subdivision (d) of section 340.8, which provides that the statute shall not be construed to limit, abrogate, or otherwise change the laws in place when section 340.8 took effect, other than those based on exposure to toxic substances. Subdivision (d) showed an intent to treat victims of toxic substance exposures differently and thereby change the existing law for all actions based on exposure to toxic or hazardous substances. (*Nguyen, supra,* 229 Cal.App.4th at pp. 1546-1550.)[5]

Upon careful analysis of the statute, the *Nguyen* court found the statutory language unambiguous. Accordingly it found it unnecessary to turn to the legislative history in order to construe section 340.8. (*Nguyen, supra,* 229 Cal.App.4th at p. 1550.) Even so, the *Nguyen* court saw nothing in the legislative history that altered its interpretation. The

---

[5] While I acknowledge that section 340.8 is not part of a comprehensive scheme, nor is section 340.4 part of a comprehensive scheme.

6

legislative history addressed only the Legislature's intent to codify the discovery rule for toxic tort exposure cases, as well as abrogate an appellate court decision holding that media reports about the harmful substance might constitute inquiry notice under the delayed discovery rule. (*Nguyen, supra,* 229 Cal.App.4th at p. 1551.)

Although the section 340.8 legislative history did not mention section 340.4 or the intent to create an exception to that statute, it also failed to state that "the Legislature intended that a different limitations period apply if the exposure occurred before or during the plaintiff's birth. In other words, there is no indication that the Legislature intended, and it makes no sense, for there to be a different discovery rule (e.g., regarding inquiry notice and media reports) depending on whether the toxic exposure occurred before or after birth. Nothing in the legislative history suggests that the Legislature intended that section 340.4 (prenatal injuries) rather than section 340.8 (toxic exposures), should apply to prenatal toxic exposure cases, or that section 352 should not apply to such cases." (*Id.* at p. 1551.)

## C. Nguyen *is Correct and its Holding Applies Equally Here*

I agree with *Nguyen* that the plain language of section 340.8 shows that it supersedes section 340.4 where an action for prenatal or birth injuries is based on exposure to toxic or hazardous substances. It is a well established rule of statutory construction that use of the term "any" means without limit and no matter what kind. (*People v. Arias* (2008) 45 Cal.4th 169, 187; *California State Auto. Asso. Inter-Insurance Bureau v. Warwick* (1976) 17 Cal.3d 190, 195 [term has been considered broad, general, and all-embracing since the earliest days of statehood].)

Giving "any" its customary interpretation, I conclude that when the Legislature said section 340.8 applies to "any" civil action for injuries caused by exposure to toxic or hazardous substances, it intended to include actions for prenatal exposure to such substances that were previously covered by section 340.4. The majority opinion

7

essentially requires sifting the term "any" to exclude certain types of actions, thereby transmuting "any" to "some."

My conclusion is also bolstered by subdivision (d) of section 340.8, which states that nothing in that section "shall be construed to limit, abrogate, or change the law in effect on the effective date of this section with respect to actions *not based upon exposure to a hazardous material or toxic substance.*" (Italics added.) The *Nguyen* court held that this language showed a legislative intent to treat victims of toxic substance exposures differently from other personal injury victims, but did not expound upon its reasoning. (*Nguyen, supra,* 229 Cal.App.4th at p. 1550.)

I believe the full import of this language becomes apparent by holding it up to an analytical mirror and examining its corollary obverse: Section 340.8 does "limit, abrogate, and change the law in effect upon the effective date . . . with respect to actions" that are based on exposure to toxic substances. That language shows a clear intent to affect section 340.4, albeit by necessary inclusion, if not express iteration. The Legislature's choice to specifically exempt asbestos exposure and medical malpractice claims from its reach, but no others, also supports my interpretation. (*In re Michael G.* (1988) 44 Cal.3d 283, 291 (*Michael G.*) [rule of statutory construction that where exceptions to a general rule are specified, other exceptions may not be implied or presumed]; *Nguyen, supra,* 229 Cal.App.4th at pp. 1546-1548; *Steven S. v. Deborah D.* (2005) 127 Cal.App.4th 319, 327 [courts presume Legislature knows how to create an exception to statutory provisions, and where it does not do so, we presume it did not intend to do so].)

I agree with the majority that the legislative history of section 340.8 never mentions section 340.4 and focuses on the goal of codifying the delayed discovery rule as announced in three appellate decisions, while rejecting a narrow formulation of that rule in another.[6] By the same token, however, it also does not mention an intent to restrict

---

[6] The Legislature said it intended to disapprove the holding in *McKelvey v. Boeing North Am., Inc.* (1999) 74 Cal.App.4th 151 [media reports establish inquiry notice], and

8

section 340.8 to toxic substance exposure cases to minors and adults.  Given the plain language analysis, I agree with *Nguyen* that the legislative history has no interpretive effect.  (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 486 [while legislative history may help interpret an ambiguous statute, it cannot change the plain meaning of clear language, and courts may not rewrite the law or give the words an effect different from the plain meaning of the language used.])

Even if I considered the legislative history, it would still point us in the same direction.  The Legislative Counsel's Digest is the official summary of the legal effect of a bill and is relied upon by the Legislature throughout the legislative process.  As a result, even though it is not binding, it is entitled to great interpretive weight.  (*Joannou v. City of Rancho Palos Verdes* (2013) 219 Cal.App.4th 746, 759.)  The Digest states that section 340.8 was intended to create "a separate statute of limitations for a civil action for injury or illness based upon exposure to a hazardous material or toxic substance *other than asbestos, as specified.*"  (Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 331 (2003-2004 Reg. Sess.) Sept. 8, 2003, italics added.)  That statement is consistent with my interpretation:  section 340.8 created a new statute of limitations for all toxic substance exposure actions except for those types of action specifically excepted.

This point is reinforced by a senate committee bill analysis, which said that the bill clarified that it "does not apply to actions relating to [asbestos exposure or medical malpractice] and specifies that the bill does not limit, abrogate, or change the law in effect on the effective date of the bill with respect to actions not based upon exposure to a hazardous material or toxic substance."  (Sen. Com. on Judiciary, 3d reading analysis Sen. Bill No. 331 (2003-2004 Reg. Sess.) as amended Sept. 8, 2003, p. 2.)  By tying

---

to codify the delayed discovery rule as described in *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103; and *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048.  (Legis. Counsel's Dig., Assem. Amends. to Sen. Bill. No. 331 (2003-2004 Reg. Sess.) as amended Sept. 8, 2003, p. 1.)

together those two provisions – the exceptions for asbestos and medical malpractice actions and the effect on existing laws – this analysis also shows that section 340.8 was designed to have broad effect and apply to all other toxic substance exposure cases.

I also observe that if the Legislature had intended to adopt only a discovery rule for toxic tort cases, it could have simply amended section 335.1 which deals generally with personal injuries and which at that time applied to toxic torts. Instead, the Legislature adopted a new statute of limitations for exposure to hazardous materials and toxic substances, stated its intent that the new statute apply to any action for such exposure, and excluded from its ambit asbestos and medical malpractice causes of action.

If, as the majority concludes, the Legislature's sole purpose in enacting section 340.8 was to make clear that media reports do not in themselves create inquiry notice in toxic tort cases, what purpose could there conceivably be in excluding from that rule cases in which the injury occurred prenatally or during childbirth? Was the Legislature intending that media reports do create inquiry notice in prenatal and birth toxic tort cases?

The majority rejects the application of section 340.8 to prenatal injuries because, among other things, it would produce an absurd result – various prenatal injuries would be subject to different statutes of limitations depending on the nature of the injury. (Maj. opn. at pp. 12-13.) Absurd results are indeed to be avoided in statutory construction, but the result described by the majority is consistent with the general framework of our statutes of limitations. Different wrongs are governed by different periods of limitation. That is what our Supreme Court recognized in *Young* when it excluded prenatal and childbirth medical malpractice claims from section 340.4. It strikes me as no more absurd to exclude toxic claims from the prenatal statute of limitations than to exclude medical malpractice claims from the prenatal statute of limitations. In both instances the unborn and just born are subject to the same rules as minors and adults.[7]

---

[7]     Under the interpretation I propose, section 340.4 still has much life left to it. Prenatal and birth injuries can occur through many forms of negligent and intentional acts that fall outside the scope of medical malpractice or toxic substance exposures, and those

More fundamentally, that the Legislature would conclude that toxic tort claims should be subject to a period of limitation different than the general personal injury statute of limitation (§ 335.1) and other statutes is neither surprising nor absurd. On the contrary, it is historically quite understandable. As one commentator has observed, and our own experience undoubtedly reveals, "Toxic torts is a relatively new area of the law." (Eggen, *The Synergy of Toxic Tort Law and Public Health: Lessons from a Century of Cigarettes*, 41 Conn L.Rev. 561 (2008).) Not only is the law relatively new, the nature of the harm from exposure to toxic and hazardous substances differs significantly from more typical personal injuries. "Insidious disease cases are fundamentally different from the snapshot torts." (Green, *The Paradox of Statutes of Limitations in Toxic Substances Litigation* (1988) 76 Cal.L.Rev. 965, 972-973 (Green).)[8] The reason for this difference is fairly self-evident: "[D]iagnosis of toxic related disease is almost always an uncertain enterprise, particularly in the early stages of the disease. Lack of understanding of biological and physiological mechanisms, absence of serious dysfunction, and the slowly progressive nature of some diseases contribute to the difficulties of diagnosis . . . . [¶] The combination of lengthy latency periods and diagnostic difficulties is a unique feature of toxic substances cases for purposes of statutes of limitations analysis: No temporally discrete event exists that encompasses the defendant's breach and the plaintiff's injury. Instead, insidious disease litigation involves an extended chronology of causation unlike traditional snapshot torts." (*Id.*, at pp. 975-976, fn. omitted, cited in *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 529-530.)

---

acts remain subject to section 340.4. Automobile accidents, premises liability, and assaults all come to mind.

[8] By "snapshot torts" the author gave as examples "shootings and streetcar and occupational accidents" probably because he was discussing the development of the statute of limitations for personal injury claims in the early 20th Century. (Green, *supra*, at p. 972.) Easily added are automobile accidents, simple assaults and batteries, and other impact torts.

The development of special statutes of limitations for toxic torts is also a recent phenomenon. The first of these statutes – section 340.2 for asbestos exposure – was enacted in 1979. Before 1979, toxic tort claims were governed by the then one-year statute of limitations for personal injuries. The cause of action accrued at the time of the wrongful act. (*Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 730-731.)[9]

Even before the effective date of section 340.2, appellate courts recognized that considerations not present in traditional personal injury actions required the statute of limitations for toxic torts to be treated differently than traditional claims. *Velasquez v. Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881 (*Velasquez*) was the first case in California to apply a discovery rule to the accrual of a cause of action for a toxic tort. Even though there was no intervening change in law and the then applicable statute of limitations was silent on the subject, the court relied in part on federal law and found strong policy reasons for the discovery rule. "We agree that in a negligence or strict liability action, discovery is the appropriate test for determining accrual of a cause of action for a progressive disease [asbestosis]." (*Id.* at pp. 887-888.)[10]

After section 340.2 was enacted, the courts were presented with whether that statute was to be applied retroactively. The Court of Appeal in both *Blakey v. Superior Court* (1984) 153 Cal.App.3d 101, 105 and *Puckett v. Johns-Manville Corp.* (1985) 169 Cal.App.3d 1010, 1016 answered the question in the affirmative. The Legislature "intended the special statute to be remedial in purpose subject not only to liberal

---

[9]    At the time, the one-year personal injury statute of limitations was section 340, subdivision (3). The applicable statute of limitations is now two years and is found in section 335.1.

[10]    When *Velasquez* was filed, section 340.2 had been enacted but was not yet effective, so the appellate court was interpreting the then one-year personal injury statute of limitations of section 340, subdivision (3). (See *Nelson v. Flintkote Co.*, *supra*, 172 Cal.App.3d at pp. 730-731.)

12

construction but to retroactive application in a manner which would encompass the causes of action of as many victims of asbestosis as possible." (*Ibid.*)

A third Court of Appeal opinion upholding the retroactive application of section 340.2 noted that some of the traditional policy reasons for statutes of limitations were not necessarily present in toxic tort cases. "Moreover, the traditional justifications for statutes of limitations do not apply here since there is no real problem of loss of witnesses' memories. An asbestos manufacturer's defense necessarily rests on documentary evidence which is typically kept in the course of business. (*O'Stricker v. Jim Walter Corp.* (1983) 4 Ohio St.3d 84 [447 N.E.2d 727].) Nor can the alleged toxic tortfeasors claim they are entitled to psychological protection from surprise suits when most knew or should have known back in the 1950's of the toxic nature of the materials they were supplying. (Note, *The Fairness and Constitutionality of Statutes of Limitations for Toxic Tort Suits* (1983) 96 Harv.L.Rev. 1683, 1685.)" (*Nelson v. Flintkote Co.*, *supra*, 172 Cal.App.3d at p. 735.) Justice Thompson, the author of the statement, was writing 31 years ago, far before the advent of back-up hard drives, data storage clouds and other high tech devices. Certainly documents are now easier to store and retrieve than they were in 1985.

As I see it, section 340.8 is just another extension of the Legislature's intent to treat toxic tort cases differently from other personal injury actions. It should be applied here.

I would reverse the order granting summary judgment.


RUBIN, J.


13